# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| HEE SOOK NAM | § |
| | § |
| v. | §    CIVIL ACTION NO. 3:20-CV-1132-S |
| | § |
| TEX NET, INC., et al. | § |

## **MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendants' Motion to Dismiss Amended Complaint ("Motion to Dismiss") [ECF No. 28]. Defendants move to dismiss for lack of personal jurisdiction under Rule 12(b)(2), failure to state a claim upon which relief may be granted under Rule 12(b)(6), and improper venue under Rule 12(b)(3). In the alternative, Defendants move to transfer the case to the Southern District of California pursuant to 28 U.S.C. § 1406(a), or for the convenience of the parties, which the Court construes as a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). For the following reasons, the Court **DENIES IN PART** and **GRANTS IN PART** the Motion to Dismiss in that the Court **DENIES** the Motion to Dismiss for lack of personal jurisdiction and **GRANTS** the motion to transfer venue.

### I.    PROCEDURAL BACKGROUND

This case was removed from the 44th Judicial District Court of Dallas County, Texas, based on diversity jurisdiction. Defs. Tex Net, Inc., Theresa Surh, Gene Surh, and Thomas Ryu's Notice of Removal [ECF No. 1]. Shortly after removal, Thomas Ryu was terminated from the case pursuant to an agreed stipulation of dismissal. Stip. of Dismissal as to Pl.'s Claims Against Def. Thomas Ryu without Prejudice [ECF No. 9]. Plaintiff filed a motion to remand [ECF No. 7], which the Court denied on the basis that: (1) Plaintiff's Original Petition did not state a claim

against Defendant Dae Surh, deceased, and Defendant Tex Tech Investments, Inc.;[1] and (2) Defendants met their burden to show that Defendant Tex Net, Inc. was not a Texas citizen at the time the case was filed and removed. Mem. Op. and Order [ECF No. 24]. As a result, Theresa Surh, Gene Surh, and Tex Net, Inc. are the only remaining defendants in this case ("Defendants").[2] After obtaining leave of Court, Plaintiff filed its First Amended Petition, Application for Temporary Restraining Order, Temporary Injunction, and Anti-Suit Injunction ("Amended Complaint") [ECF No. 27]. Defendants filed the Motion to Dismiss on August 28, 2020. After obtaining multiple extensions, Plaintiff filed a response on January 11, 2021. Pl.'s Resp., and Br. in Supp. thereof, to Defs. Tex Net, Inc., Theresa Surh, Gene Surh, and Thomas Ryu's Mot. to Dismiss ("Response") [ECF No. 51]. The Motion to Dismiss is now ripe and pending before the Court.

## II.     FACTUAL BACKGROUND

This action arises out of a stock ownership dispute between Plaintiff and Defendants Theresa Surh and Gene Surh. In 1999, Dae Surh and Theresa Surh, a married couple residing out-of-state, created an investment scheme to purchase stock shares of Verimatrix, Inc. ("Verimatrix"), a California corporation in which Dae Surh was a founding member. *See* Am. Compl. ¶ 17. According to Plaintiff, Dae Surh travelled to Texas to solicit investments from Plaintiff, Plaintiff's husband, and other Texas residents (collectively, "Texas Investors"). *Id.* ¶¶ 17-19. Under the

---

[1] Plaintiff's Original Petition and Amended Complaint lists "Tex Tech Investments, LLC" in the caption, but the body of each document refers to "Tex Tech Investments, Inc." The reference to Tex Tech Investments, LLC in the caption appears to be a typographical error. In the Court's Memorandum Opinion and Order addressing Plaintiff's motion to remand, the Court found that Plaintiff's Original Petition did not state a claim against Tex Tech Investments, LLC. However, given that this name appears to be an error, the Court clarifies that the Memorandum Opinion and Order found that Plaintiff's Original Petition did not state a claim against Tex Tech Investments, Inc.

[2] Plaintiff continues to assert claims against Dae Surh and Tex Tech Investments, Inc. in the Amended Complaint. *See* Am. Compl. ¶¶ 5, 8. As noted, the Court previously found that Dae Surh and Tex Tech Investments, Inc. were improperly joined because Plaintiff did not state a claim against them in the Original Petition, Mem. Op. and Order [ECF No. 24], which was tantamount to dismissing claims against them without prejudice, *see Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp. Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016).

2

proposed investment scheme, Dae Surh would purchase Verimatrix shares through a holding company for the benefit of the Texas Investors. *See id.* ¶ 19. Tex Net, Inc. ("Tex Net"), a Delaware corporation, was incorporated for this purpose. *See id.* ¶¶ 22-23; *id.*, Ex. B.

In 2001, the Texas Investors made their initial investment in Verimatrix, which was documented by a stock purchase agreement ("Stock Purchase Agreement"). *Id.* ¶ 25. Theresa Surh signed the Stock Purchase Agreement on behalf of Tex Net. *Id.* Dae Surh and Theresa Surh did not personally acquire Verimatrix shares pursuant to the Stock Purchase Agreement, but did acquire Verimatrix shares through Tex Net at a later date. *Id.* ¶¶ 26, 45, 53. Although Theresa Surh executed the Stock Purchase Agreement on behalf of Tex Net, Plaintiff claims that Theresa Surh subsequently represented at a Tex Net meeting that Tex Net belonged to the Texas Investors and acknowledged that Plaintiff, not Theresa Surh, was Tex Net's president. *See id.* ¶ 29.

Over the next several years, Tex Net entered into multiple transactions with Verimatrix pursuant to which Tex Net either loaned money to Verimatrix, acquired additional Verimatrix shares, or acquired warrants to purchase Verimatrix shares. *Id.* ¶¶ 30-55. Plaintiff executed the agreements documenting these transactions on behalf of Tex Net, and Dae Surh or Theresa Surh recorded each investor's contribution on handwritten notes. *Id.* ¶¶ 27, 30-55, 74.

In 2005, the Texas Investors and Dae Surh transferred their Verimatrix shares held by Tex Net to a new company incorporated in Texas, Tex Tech Investments, Inc. ("Tex Tech"). *Id.* ¶¶ 46-47. The transfer was documented by a stock transfer agreement, dated August 10, 2005 ("Stock Transfer Agreement"), which Plaintiff signed on behalf of each company. *Id.* ¶¶ 47-48. According to Plaintiff, it was Dae Surh's idea to form Tex Tech and Dae Surh instructed Plaintiff to sign the Stock Transfer Agreement on behalf of Tex Net and Tex Tech, which she did. *Id.* ¶¶ 46, 48; *see also id.*, Ex. G (Stock Transfer Agreement signed by Plaintiff as the president of both Tex Net and

Tex Tech). Plaintiff asserts that each investor's ownership interest in Tex Net was transferred in the same percentage to Tex Tech, except that Dae Surh transferred his ownership interest to his son, Gene Surh, and daughter, Joanna Surh. *Id.* ¶ 49.

The parties continued to purchase additional Verimatrix shares through Tex Tech. *Id.* ¶ 53. In 2019, a company called Inside Secure purchased Verimatrix, including the Verimatrix shares held by Tex Tech. *Id.* ¶ 55. Pursuant to the sale, Plaintiff asserts that each investor received payment for their proportionate investment in Verimatrix. *Id.*

After Dae Surh passed away, a disagreement arose between Plaintiff and Theresa Surh regarding the validity of the Stock Transfer Agreement and ownership of Verimatrix shares. *See id.* ¶¶, 5, 66. On January 15, 2020, Theresa Surh, Gene Surh, and Tex Net sued Plaintiff, Tex Tech, Verimatrix, and Robin Ross Cooper (Verimatrix's president) in California seeking to invalidate the Stock Transfer Agreement ("California Lawsuit"), alleging, among other things, that Theresa Surh was Tex Net's president and Plaintiff was not authorized to execute the Stock Transfer Agreement. *Id.* ¶ 66; *id.*, Ex. K. According to Plaintiff, Theresa Surh also claims that, as Tex Net's alleged president and shareholder, she is entitled to all the shares held by Tex Net prior to the transfer to Tex Tech. *Id.* ¶ 67. Plaintiff alleges that: (1) Defendants' claims in the California Lawsuit are without merit and are barred by the statute of limitations; (2) Dae Surh and Theresa Surh's conduct constitutes fraud; (3) Defendants' alleged misrepresentations will deprive Plaintiff of the value of her Verimatrix investments; and (4) Plaintiff will be financially harmed by the cost to defend against the California Lawsuit. *See id.* ¶¶ 68, 98, 101, 107.

Based on the foregoing allegations, Plaintiff brings the following claims: (1) fraud; (2) unjust enrichment; and (3) money had and received. *Id.* ¶¶ 100-11. Plaintiff also seeks a declaratory judgment that, among other things, the California Lawsuit is barred by the statute of

limitations. *Id.* ¶ 92. Finally, Plaintiff seeks a temporary restraining order and injunction preventing Theresa Surh, Gene Surh, and Tex Net from taking any further action in the California Lawsuit. *Id.* ¶¶ 113-62.

### III.     LEGAL STANDARD

#### A.     *Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows defendants to move to dismiss claims for lack of personal jurisdiction. The plaintiff bears the burden of making a prima facie showing that a court has personal jurisdiction over a defendant. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). In considering a motion to dismiss pursuant to Rule 12(b)(2), the court must accept the plaintiff's "uncontroverted allegations, and resolve in its favor all conflicts." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

Because Texas's long-arm statute extends to the limits of federal due process, this Court has personal jurisdiction over a nonresident defendant so long as the assertion of jurisdiction comports with the Due Process Clause of the United States Constitution. *See Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). Personal jurisdiction can be general or specific. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General jurisdiction allows a court to hear any claim against a nonresident defendant, and it exists when that defendant's "affiliations with [Texas] are so 'continuous and systematic' as to render them essentially at home in [Texas]." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Establishing general jurisdiction is 'difficult' and requires 'extensive contacts between a defendant and a forum.'" *Sangha*, 882 F.3d at 101-02 (quoting *Johnston*, 523 F.3d at 609).

"In order for a . . . court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (first alteration added) (quoting *Daimler AG*, 571 U.S. at 127). "Such activity or occurrence must 'create a substantial connection with the forum State,'" and without such "connection, 'specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.'" *Inmar Rx Sols., Inc. v. Devos, Ltd.*, No. 18-11443, 2019 WL 4440400, at *2 (5th Cir. Sept. 16, 2019) (first quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014); and then quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1781)).

In evaluating whether due process allows the exercise of specific jurisdiction, courts consider:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d. 266, 271 (5th Cir. 2006)). The minimum contacts analysis is fact intensive, and the touchstone is "whether the defendant's conduct shows that it 'reasonably anticipates being hauled into court'" in the forum state. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). "Because 'specific personal jurisdiction is a claim-specific inquiry,' '[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *Inmar Rx*, 2019 WL 4440400, at *3 (quoting *McFadin*, 587 F.3d at 759).

6

Once the plaintiff demonstrates that the defendant has minimum contacts with the forum and that the action arises out of those contacts, the burden shifts to the defendant to show that the exercise of jurisdiction is "unfair and unreasonable." *Sangha*, 882 F.3d at 102. In determining whether the defendant has carried this burden, courts balance five factors: (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies. *Id.*

### B.     *1406(a)*

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

> Section 1406(a) allows a transfer where the first forum chosen is improper due to the existence of some obstacle to adjudication on the merits. *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir.1967). The statute specifically refers to "laying venue in the wrong division or district," but a transfer can be made due to the absence of personal jurisdiction in a district where venue is otherwise proper. *See Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir.1985). . . . [A] division or district may be "wrong" under Section 1406(a) when the original court lacks personal jurisdiction. *Id.*

*Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). "The district court has broad discretion in determining whether to dismiss or transfer a case in the interest of justice under § 1406(a)." *LSF4 Loan Invs. I, LLC v. Weingart*, No. 3:06-cv-419-M, 2006 WL 2370803, at *3 (N.D. Tex. Aug. 15, 2006) (citation omitted).

### C.     *1404(a)*

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to

7

any district or division to which all parties have consented." 28 U.S.C. § 1404(a). As a plaintiff's original choice of forum is ordinarily entitled to some deference, the party seeking transfer must demonstrate that the transferee venue is clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The plaintiff's choice of forum is not, however, "an independent factor within . . . the § 1404(a) analysis." *Id.* 314 n.10. In applying § 1404(a), the Court must first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (citation omitted). Once this determination is made,

> [the Court] turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public interest factors, none of which are given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations omitted).

After considering "[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum," the decision to transfer venue under § 1404(a) is left to the sound discretion of the court. *See El Chico Rests. of Tex., Inc. v. Carroll*, Civil Action No. 3:09-cv-2294-L, 2010 WL 2652286, at *2 (N.D. Tex. June 29, 2010) (alteration in original) (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)).

8

## IV. ANALYSIS

### A. *Personal Jurisdiction*

#### (1) *Gene Surh*

Plaintiff asserts that Gene Surh is subject to specific personal jurisdiction based on the following allegations: (1) Gene Surh is a shareholder of Tex Tech; (2) Dae Surh acted as Gene Surh's agent because Dae Surh transferred Gene Surh's Tex Net shares to Tex Tech and attended Tex Tech meetings in Texas, with Gene Surh's consent; (3) Because Dae Surh was Gene Surh's alleged agent, Dae Surh's Texas contacts should be imputed to Gene Surh; and (4) Between 2014 and 2018, Gene Surh communicated several times on behalf of Tex Tech regarding the disputed shares, including communications directed toward Texas. Resp. 10-14. Defendants, on the other hand, assert that Gene Surh resides in California, he does not have sufficient contacts with Texas, and Plaintiff's claims do not arise out of Gene Surh's alleged contacts with Texas. Defs.' Texnet, Inc., Theresa Surh, and Gene Surh's Br. in Supp. of their Mot. to Dismiss Am. Compl. ("Br. in Supp. of Mot. to Dismiss") [ECF No. 29], 14-16, 24.

The Court finds that Gene Surh is not subject to specific personal jurisdiction for several reasons. First, Gene Surh's status as a Tex Tech shareholder is not sufficient to establish personal jurisdiction. *Bezner v. Poehler*, Civil Action No. 3:18-cv-3060-B, 2019 WL 1514981, at *4 (N.D. Tex. Apr. 8, 2019) (noting that it is "well understood" that an individual's status as an officer, director, or majority shareholder of a corporation alone is insufficient to support the exercise of personal jurisdiction) (citation omitted).

Second, because Gene Surh's alleged contacts with Texas, according to Plaintiff, were made in his capacity as a Tex Tech shareholder, Tex Tech was the entity making contact with Texas, not Gene Surh in his personal capacity. *See Stuart*, 772 F.2d at 1197 (noting that, as a general rule, jurisdiction over an individual cannot be predicated on jurisdiction over a corporation

9

unless a basis exists for disregarding the corporate fiction). Furthermore, Plaintiff has not asserted a basis for disregarding Tex Tech's corporate status and imputing Tex Tech's contacts to Gene Surh. *Petras v. Mole*, Civil Action No. 3:11-cv-1402-N, 2012 WL 13103200, at *6 (N.D. Tex. May 17, 2012) ("The party seeking to impute the corporation's jurisdictional contacts has the burden of proof.") (citation omitted).

Third, despite Plaintiff's allegation that Dae Surh acted as Gene Surh's agent with respect to Gene Surh's Tex Tech shares, Plaintiff does not allege facts that demonstrate an agency relationship. *Blueskygreenland Env't Sols., LLC v. Rentar Env't Sols., Inc.*, Civil Action No. 4:11-cv-01745, 2011 WL 5553706, *4 (S.D. Tex. Nov. 14, 2011) ("Conclusory assertions, without evidence in the record, are insufficient to infer agency relationship for the purposes of establishing personal jurisdiction.") (citation omitted). "The critical element of an agency relationship is the right of control, and the principal must have the right to control both the means and the details of the process by which the agent is to accomplish his task in order for an agency relationship to exist." *Goodman v. Whole Foods Market, Inc.*, Cause No. A-05-CA-422-LY, 2006 WL 8432867, at *6 (W.D. Tex. Sept. 26, 2006) (citation omitted). Plaintiff does not allege that Gene Surh (as the alleged principal) had the right to control Dae Surh's actions (as the alleged agent); rather, from the facts alleged, it appears that Dae Surh merely gifted Gene Surh with Tex Tech shares. Absent proof of the right to control, Plaintiff has not stated sufficient facts to demonstrate an agency relationship between Dae Surh and Gene Surh.

Finally, Plaintiff's suit does not arise out of or result from Gene Surh's alleged contacts with Texas. The crux of the California Lawsuit is whether Plaintiff was authorized to execute the Stock Transfer Agreement and whether Theresa Surh is entitled to all of the Verimatrix shares held by Tex Net at the time of the transfer. Am. Compl. ¶¶ 66-67. The crux of the case pending in this

Court is whether Defendants should be enjoined from pursuing the California Lawsuit. *Id.* ¶¶ 112-63. The Court finds that Gene Surh's alleged communications (on behalf of Tex Tech) regarding his Tex Tech shares are not sufficiently related to the instant lawsuit to support the exercise of personal jurisdiction, and, therefore, the Court finds that Plaintiff has not alleged sufficient facts to make out a prima facie case supporting personal jurisdiction over Gene Surh.[3]

### (2) *Remaining Defendants*

The Court need not consider whether Plaintiff has alleged sufficient facts to make out a prima facie case supporting personal jurisdiction over Theresa Surh and Tex Net. Assuming *arguendo* that the Court has personal jurisdiction over Theresa Surh and Tex Net, if the Court were to dismiss the lawsuit against Gene Surh, Plaintiff could file her lawsuit against Gene Surh in the Southern District of California, which would result in the same issues being litigated in two places. This is disfavored. *See Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987) (finding courts "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places") (citation omitted). Multiple courts faced with this situation have exercised their discretion to transfer the entire case to a district where the lawsuit could have been brought. *See, e.g., Brooks & Baker, L.L.C. v. Flambeau, Inc.*, Civil Action No. 2:10-cv-146-TJW-CE, 2011 WL 4591905, at *6 (E.D. Tex. Sept. 30, 2011) (transferring entire action when court lacked personal jurisdiction over some, but not all, defendants); *see also Martinez v. Angel Expl., LLC*, No. 2:12-CV-265, 2013 WL 1496954, at *5 (N.D. Tex. Apr. 11,

---

[3] Because Plaintiff did not meet its burden to show that Gene Surh has minimum contacts with Texas and that the action arose out of those contacts, the Court need not consider whether Defendants demonstrated that the exercise of jurisdiction is unfair and unreasonable. *Excentus Corp. v. Success Sys., Inc.*, Civil Action No. 3:19-cv-0897, 2019 WL 6346476, at *7 (N.D. Tex. Nov. 26, 2019) (citation omitted).

2013) (transferring entire action when venue was improper as to one defendant to avoid unnecessary delay and expense). Thus, regardless of whether the Court has personal jurisdiction over Theresa Surh and Tex Net, transfer of the entire action is appropriate under either 28 U.S.C. § 1406(a) or § 1404(a) for the reasons explained below.

### B.     *1406(a)*

Section 1406(a) permits a court to transfer a case to any district or division in which it could have been brought regardless of whether it has personal jurisdiction over the defendants. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) (citing 28 U.S.C. § 1406(a); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). Defendants argue that Plaintiff could have originally filed her lawsuit in the Southern District of California, *see* Br. in Supp. of Mot. to Dismiss 24, which Plaintiff does not dispute.[4] Defendants also consent to specific personal jurisdiction for purposes of this lawsuit in the Southern District of California. *Id.* at 24 n.5.

The Court agrees that Plaintiff could have originally filed suit in the Southern District of California because both venue and jurisdiction are proper there. Under 28 § U.S.C. 1391(b)(2), a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. A substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of California because: (1) Defendants filed the

---

[4] Moreover, Plaintiff does not address Defendants' alternative motion to transfer venue in her Response. Accordingly, Plaintiff has waived any objection to the motion to transfer venue. *See, e.g., United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (holding that failure to adequately brief an argument results in waiver); *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that plaintiff's failure to defend her claim in her response to the defendant's motion to dismiss "constituted abandonment") (citation omitted); *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) ("Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level.").

California Lawsuit in the state court embraced by that district,[5] *see* Am. Compl., Ex. K; and (2) the disputed transactions with Verimatrix occurred in that district, *see id.* ¶ 95 (noting the transfer of Verimatrix shares from Tex Net to Tex Tech was ratified by Robin Ross Cooper on behalf of Verimatrix); *id.*, Ex. K, ¶¶ 7-8 (noting Verimatrix's principal place of business is in San Diego and Robin Ross Cooper resides in San Diego). Alternatively, if there is no venue in which the action may otherwise be brought, venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b)(3). Thus, because Defendants assert that they are subject to personal jurisdiction in the Southern District of California, Br. in Supp. of Mot. to Dismiss 24, venue may also be proper under 28 U.S.C. § 1391(b)(3). Accordingly, the Court finds that the present lawsuit could have been brought in the Southern District of California. Transfer is also appropriate in the interest of justice to avoid duplicative litigation arising from the same transactions and events. *See Taylor v. Turner Indus. Grp., LLC*, Civil Action No. 2:11-cv-57, 2011 WL 13134192, at *5 (E.D. Tex. June 20, 2011) (finding that splitting Plaintiff's claims into multiple cases would be judicially and economically inefficient).

### C.     *1404(a)*

Alternatively, Defendants argue that "the Court should transfer the case to the Southern District of California because that is a more convenient venue for the parties." Br. in Supp. of Mot. to Dismiss 24 n.4. The Court construes this argument as a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). *See Walter Oil & Gas Corp. v. Teekay Shipping*, 270 F. Supp. 2d 855, 859 (S.D. Tex. 2003) (construing motion to transfer venue for convenience as a motion to transfer pursuant to 28 U.S.C. § 1404(a)). Having determined that Plaintiff's lawsuit could have been brought in the Southern District of California, the Court must decide whether private and public

---

[5] Defendants filed suit in the Superior Court of the State of California for the County of San Diego. Am. Compl., Ex. K.

13

concerns weigh in favor of or against the transfer. *See In re Volkswagen AG*, 371 F.3d at 203 (citation omitted).

The private concerns weigh in favor of transfer. Plaintiff filed her lawsuit to enjoin the California Lawsuit and the facts and allegations contained in the Amended Complaint overlap considerably with the facts and allegations asserted in the California Complaint. *Compare* Am. Compl. *with id.*, Ex. K (California Complaint). It is apparent that much of the evidence, witnesses, and parties, including Gene Surh, located in California and relevant to the California Lawsuit would also be relevant to the present case. The Court may not have jurisdiction over many of the California witnesses to compel their attendance at trial. Further, the cost for the willing witnesses to attend a trial in Texas would be significantly higher than for those witnesses located in California. Therefore, the Court finds that trial would be more expeditious, and less expensive in California.[6]

Finally, the public concerns also weigh in favor of transfer. Because Plaintiff's lawsuit centers on the California Lawsuit, involves actions that took place in California, and implicates California residents, California has an interest in adjudicating this case. Although Plaintiff brings her claims under Texas law, the transactional documents at issue in this case, which Plaintiff attached to her Amended Complaint in support of her claims, are governed by California law. Am. Compl., Ex. B (Security Agreement); *id.*, Ex. C (Warrant to Purchase Series B Preferred Stock); *id.*, Ex. E (Founders Settlement Agreement and General Release); *id.*, Ex. F (Settlement Agreement); *id.*, Ex. G (Stock Transfer Agreement); *id.*, Ex. H (Verimatrix, Inc. Amended and Restated Shareholders' Agreement). The claims asserted in the California Lawsuit are also

---

[6] The Court also notes that a related case was transferred from this district to the Southern District of California pursuant to 28 U.S.C. § 1406(a). *See Lee v. Verimatrix, Inc.*, Civil Action No. 3:19-cv-0898-B, 2019 WL 5535764 (N.D. Tex. Oct. 25, 2019) (case brought by James Pyung Lee and Plaintiff against Verimatrix, Inc., Robin Ross Cooper, and Inside Secure regarding a dispute over Verimatrix, Inc. stock ownership).

14

brought under California law. *Id.*, Ex. K (California Complaint). Having weighed the private and public factors, the Court concludes that the Southern District of California is clearly the most convenient forum in which to litigate the parties' dispute. Therefore, regardless of the status of personal jurisdiction, transfer is proper under either 28 U.S.C. §§ 1406(a) or 1404(a).

## V.     CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART** and **GRANTS IN PART** Defendants' Motion to Dismiss Amended Complaint [ECF No. 28]. The Court **DENIES** Defendants' Motion to Dismiss for lack of personal jurisdiction. The Court **GRANTS** Defendants' motion to transfer venue and **TRANSFERS** this case to the Southern District of California, San Diego Division. As the Court exercises its discretion to transfer the case, the Court shall not reach the remaining arguments in the Motion to Dismiss. Any unresolved issues are respectfully deferred to the considered judgment of the transferee Court.

**SO ORDERED.**

SIGNED February 12, 2021.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**